UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| UNITED STATES OF AMERICA | : | CRIMINAL NO. 1-07-148 |
|---|---|---|
| | : | |
| v. | : | |
| | : | SUPERSEDING INDICTMENT |
| | : | 21 U.S.C. § 846 |
| (1) MAURICE FERGUSON | : | 21 U.S.C. § 841(a)(1) |
| a.k.a. "REECE" | : | 21 U.S.C. § 841(b)(1)(A) |
| a.k.a. "RED" | : | 21 U.S.C. § 841(b)(1)(D) |
| (2) RAHEEM GEORGE FOREMAN | : | 21 U.S.C. § 853(a) |
| a.k.a. "GEORGE FREEMAN" | : | 21 U.S.C. § 856(a)(1) |
| a.k.a. "DOG" | : | 21 U.S.C. § 856(a)(2) |
| (3) GARY MARSHALL | : | 18 U.S.C. § 2 |
| a.k.a. "RAY RAY" | : | 18 U.S.C. § 1952 |
| (4) PADRON THOMAS | : | 18 U.S.C. § 1956(h) |
| a.k.a. "TRON" | : | 18 U.S.C. § 922(g)(1) |
| (5) JESSE MASCUS | : | 18 U.S.C. § 924(a)(2) |
| (6) MARCUS FERGUSON | : | 18 U.S.C. § 924(e) |
| (7) ANTHONY GAMBRELL | : | 18 U.S.C. § 924(c)(1) |
| a.k.a. "ANTHONY FERGUSON" | : | |
| (8) LARRY KAUFMAN | : | |
| (9) MIA LANICE CHANEY | : | |
| (10) MARIO FERGUSON | : | |
| (11) CERAN LIPSCOMB | : | |
| (12) MICHAEL FERGUSON | : | |

- - - - - - - - - - - - - -

THE GRAND JURY CHARGES THAT:

COUNT 1

Beginning in or about January of 1995 and continuing up to and including the date of this Indictment, in the Southern District of Ohio and elsewhere, the defendants, MAURICE FERGUSON, a.k.a. "REECE" and "RED," RAHEEM GEORGE FOREMAN, a.k.a. "GEORGE FREEMAN" and "DOG," GARY MARSHALL, a.k.a. "RAY RAY," PADRON THOMAS, a.k.a. "TRON," JESSE MASCUS, MARCUS FERGUSON, ANTHONY GAMBRELL, a.k.a

"ANTHONY FERGUSON," LARRY KAUFMAN, MIA LANICE CHANEY, MARIO FERGUSON, CERAN LIPSCOMB, MICHAEL FERGUSON and others, both known and unknown to the grand jury, did knowingly and intentionally, unlawfully combine, conspire, confederate, and agree with each other, to possess with intent to distribute in excess of 1,000 kilograms of marijuana, a Schedule I Controlled Substance, in violation of the laws of the United States, to wit; 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).

It was a part of the conspiracy that **MAURICE FERGUSON, FOREMAN, MARSHALL, THOMAS, MASCUS, CHANEY, LIPSCOMB** and others, both known and unknown to the grand jury, would maintain residences in California, Ohio and elsewhere for the purpose of concealing, storing, packaging, and distributing large amounts of marijuana and/or U.S. currency.

It was a part of the conspiracy that **MAURICE FERGUSON, MARSHALL** and others, both known and unknown to the grand jury, would travel to California to meet with **FOREMAN** and others for the purpose of arranging shipments of the marijuana to the Southern District of Ohio and elsewhere.

It was a part of the conspiracy that members of the organization would, at times, travel in separate vehicles to and from Chicago, Illinois and elsewhere for the purpose of monitoring loads of marijuana as they were further transported to Cincinnati, Ohio.

It was part of the conspiracy that, once the marijuana was transported from California in semi-tractor trailers to the respective locations in Ohio, Illinois and elsewhere, **MAURICE FERGUSON, MARSHALL, THOMAS, MASCUS** and others, both known and unknown to the grand jury, would pick up the marijuana for further distribution.

It was part of the conspiracy that **MAURICE FERGUSON, MARSHALL, THOMAS, MASCUS** and others, both known and unknown to the grand jury, would divide the large amount of marijuana into smaller increments for the purpose of further distribution in the Greater Cincinnati, Ohio area.

It was a part of the conspiracy that **MAURICE FERGUSON** would supply marijuana to **THOMAS, MASCUS, MARCUS FERGUSON, GAMBRELL, MARIO FERGUSON, LIPSCOMB** and others, both known and unknown to the grand jury, for the purpose of further distribution.

It was a part of the conspiracy that **MAURICE FERGUSON, MARSHALL** and others, both known and unknown to the grand jury, were responsible for returning the proceeds from the sales of marijuana to **FOREMAN**.

It was part of the conspiracy that **MAURICE FERGUSON** and others known to the grand jury would attempt to conceal their share of the marijuana proceeds in real estate and commercial enterprises, including music recording and clothing businesses.

It was a part of the conspiracy that **MAURICE FERGUSON** and others used the location of his commercial enterprise to discuss his marijuana distribution activities.

It was a part of the conspiracy that **MICHAEL FERGUSON** would conceal large sums of narcotics proceeds in his home for other members of the conspiracy.

It was a part of the conspiracy that **MICHAEL FERGUSON** would act as a nominee in purchasing residences and apartment buildings for other members of the conspiracy.

It was a part of the conspiracy that **MICHAEL FERGUSON** would allow other members of the conspiracy to invest and/or commingle narcotics proceeds into the real estate he owned as a nominee in order to increase the value and/or equity of the property.

It was a part of the conspiracy that **MAURICE FERGUSON** and others used the proceeds of the marijuana sales to support bets in illegal dog fighting activities in the Southern District of Ohio and elsewhere.

It was a part of the conspiracy that members of the conspiracy would possess firearms and ammunition for the purpose of protecting the drugs and proceeds.

It was a part of the conspiracy that members of the conspiracy would utilize telephones, cellular telephones, and two-way communication devices to communicate with each other and other members of the conspiracy in order to facilitate the operation.

**Overt Acts**

In order to further the objects of the conspiracy and in an effort to attain its objectives, the defendants, and others both known and unknown to the grand jury performed among others, the following overt acts:

1. During the time period listed in the Indictment, **MAURICE FERGUSON, MARSHALL, THOMAS, MASCUS, LIPSCOMB** and others used the residential locations in the Southern District of Ohio for the purpose of either receiving, concealing, repackaging, and distributing marijuana. These residential locations included 1627 Republic Street, apartment 101, 1411 Teakwood Avenue, 1807 Waltham Avenue, 1706 Vine Street, 2nd Floor, 19 Lincoln Terrace, apartment 10, 6212 Savannah Street, 1719 Sycamore Street, 1793 Queen City Avenue, 6365 Meis Avenue, and 2554 Western Northern Boulevard, apartment no. 2, Cincinnati, Ohio; 7538 Dimmick Road, West Chester, Ohio; 1925 Greenwood Avenue and 419 Northland Boulevard, Sharonville, Ohio.

2. On or about August 27, 2003, **MAURICE FERGUSON** and **MASCUS** utilized 1627 Republic Street, apartment 101, Cincinnati, Ohio for the purpose of storing, packaging, and distributing marijuana as well as keeping firearms and ammunition, scales, and other materials used to package and distribute marijuana.

3. On or about March 29, 2004, **MAURICE FERGUSON** and **MASCUS** were detained in the Los Angeles Airport (LAX) and determined to be in possession of approximately $60,000 U.S. currency.

5

4. On or about September 27, 2005, **MARCUS FERGUSON** possessed approximately 1600 pounds of marijuana while traveling from Chicago, Illinois to the Southern District of Ohio.

5. In or about January of 2006, **MICHAEL FERGUSON** rented a residence at 5548 Lakeside Drive, Fairfield, Ohio to a member of the drug trafficking organization and the rent proceeds constituted profits from the sale of narcotics.

6. During the time period that **MICHAEL FERGUSON** rented the Lakeside residence to the member of the drug trafficking organization, **MICHAEL FERGUSON** allowed the member of the drug trafficking organization to invest between $40,000 - 50,000 in the property.

7. On or about January 3, 2006, **MAURICE FERGUSON** met with confidential source of information to discuss the sale of marijuana.

8. Sometime prior to March of 2006, a member of the drug trafficking organization gave **MICHAEL FERGUSON** approximately $70,000 towards the purchase of two apartment buildings located at 736 South Fred Shuttlesworth Circle, Cincinnati, Ohio.

9. On or about March 1, 2006, **MICHAEL FERGUSON** purchased two apartment buildings located at 736 South Fred Shuttlesworth Circle, Cincinnati, Ohio.

10. On or about September 18, 2006, **MASCUS** met with a

confidential source of information at 1706 Vine Street, Cincinnati, Ohio to discuss the sale of a large amount of marijuana for approximately $1,100 - $1,150 per pound.

11. Between 2004 and 2006, **MICHAEL FERGUSON** concealed large sums of narcotics proceeds provided to him by members of the conspiracy at his residence located at 11894 Winston Court, Cincinnati, Ohio.

12. On or about January 4, 2007, **THOMAS** discussed with a person known to the grand jury the inspection and sale of a large amount of marijuana.

13. On or about January 4, 2007, **THOMAS** met with a person known to the grand jury at an apartment located in the Walnut Hills area of Cincinnati, Ohio and discussed the sale of approximately 100 pounds of marijuana.

14. On or about January 4, 2007, **MASCUS** contacted the person known to the grand jury and indicated that he was in possession of 100 pounds of marijuana that **THOMAS** had for sell and that the price for each pound of the marijuana would be $1,175 U.S. currency.

15. On or about January 4, 2007, **MASCUS** possessed approximately 50 pounds of marijuana at his residence located at 6365 Meis Avenue, Cincinnati, Ohio.

16. On or about May 8, 2007, **FOREMAN** spoke to a confidential source of information regarding the narcotics activities of the organization. During the discussion, **FOREMAN** inquired as to the

7

state of other members of the drug trafficking organization and the amount of marijuana that was necessary for shipment.

17. On or about May 21, 2007, **FOREMAN** and a confidential source of information discussed the drug trafficking activities of the organization. During the conversation, **FOREMAN** indicated that he was getting the marijuana load together for shipment to the Southern District of Ohio.

18. On or about May 24, 2007, **MAURICE FERGUSON** and a confidential source of information discussed the drug trafficking activities of the organization.

19. On or about May 27, 2007, **FOREMAN** and a confidential source of information discussed the drug trafficking activities of the organization.

20. On or about July 12, 2007, **MAURICE FERGUSON** and **MIA CHANEY** met with a confidential source of information and discussed the drug trafficking activities of the organization.

21. On or about July 23, 2007, **MAURICE FERGUSON** and a confidential source of information discussed the drug trafficking activities of the organization.

22. On or about July 24, 2007, **THOMAS** provided **MARIO FERGUSON** approximately nine (9) pounds of marijuana at a residence located at 1719 Sycamore Street, Cincinnati, Ohio.

23. On or about October 25, 2007, **LIPSCOMB** rented an apartment located at 2554 Westwood Northern Boulevard, no.2, Cincinnati, Ohio for the purpose of distributing marijuana.

8

24. On or about October 25, 2007, **THOMAS** and **LIPSCOMB** possessed four digital scales, materials used to package and distribute marijuana, and approximately 22 pounds of marijuana.

25. On or about October 25, 2007, **THOMAS** possessed approximately $28,900.00 U.S. currency and a loaded Taurus Titanium firearm.

26. On or about October 30, 2007, **FOREMAN** and a confidential source of information discussed the drug trafficking activities of the organization.

27. On or about November 6, 2007, **MAURICE FERGUSON, GAMBRELL, KAUFMAN,** and **CHANEY** used a residence located at 1793 Queen City Avenue, Cincinnati, Ohio for the purpose of counting approximately $103,000 U.S. currency which was expected to be provided to **FOREMAN** via **MARSHALL**.

28. On or about November 6, 2007, **KAUFMAN** was stopped and determined to be in possession of $103,000 U.S. currency.

All in violation of 21 U.S.C. § 846.

### COUNT 2

On or about the period between September 26 through 27, 2005, defendant, **MARCUS FERGUSON,** did knowingly, willfully, intentionally, and unlawfully travel in interstate commerce from the Southern District of Ohio to Illinois with the intent to further, promote, manage, and carry on an unlawful activity, that being the business enterprise involving the distribution of

marijuana, a Schedule I Controlled Substance, in violation of the laws of the United States, Title 21 U.S.C. § 841(a)(1) and thereafter the defendant did perform acts to further, promote, manage and carry on said unlawful activity.

In violation of 18 U.S.C. § 1952.

### COUNT 3

On or about October 25, 2007, in the Southern District of Ohio, defendant, **PADRON THOMAS**, having been convicted of three felony crimes of violence each punishable by imprisonment for a term exceeding one (1) year, those being, Forcible Rape, in case number B-90 4624, in the Hamilton County Court of Common Pleas, Hamilton County, Ohio; Robbery, in case number B-88 03991, in Hamilton County Court of Common Pleas, Hamilton County, Ohio; and, Breaking and Entering, in case number B-87 05378, in the Hamilton County Court of Common Pleas, Hamilton County, Ohio, did knowingly possess a loaded firearm in and affecting commerce, to wit: a Taurus, .357 Magnum caliber revolver, serial number VH972752, which had been shipped in interstate commerce.

All in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. §§ 924(a)(2) and (e).

### COUNT 4

On or about October 25, 2007, in the Southern District of Ohio, defendants, **PADRON THOMAS** and **CERAN LIPSCOMB,** possessed with

10

intent to distribute approximately 22 pounds of marijuana, a Schedule I Controlled Substance.

In violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) and 18 U.S.C. § 2.

### COUNT 5

On or about October 25, 2007, in the Southern District of Ohio, defendant, **PADRON THOMAS,** did, in furtherance of a drug trafficking offense for which **PADRON THOMAS** could be prosecuted in a court of the United States, did possess a firearm and ammunition, to wit: a Taurus, .357 Magnum caliber revolver, serial number VH972752.

In violation of 18 U.S.C. §§ 924(c)(1).

### COUNT 6

On or about October 25, 2007, in the Southern District of Ohio, defendant, **CERAN LIPSCOMB,** did knowingly open, lease, rent, use or maintain a place, that being 2554 Westwood Northern Boulevard, apartment number 2, whether permanently or temporarily, for the purpose of distributing or using marijuana, a Schedule I Controlled Substance.

In violation of 21 U.S.C. § 856(a)(1).

## COUNT 7

On or about October 25, 2007, in the Southern District of Ohio, defendant, **CERAN LIPSCOMB,** did manage or control a place, that being 2554 Westwood Northern Boulevard, apartment number 2, whether permanently or temporarily, either as an owner, lessee, or occupant, and knowingly and intentionally rent, lease, profit from, or make available for use, with or without compensation, the place for the purpose of unlawfully storing, distributing, or using marijuana, a Schedule I Controlled Substance.

In violation of 21 U.S.C. § 856(a)(2).

## COUNT 8

Beginning in or about June of 2002 and continuing to and including the date of the Indictment, in the Southern District of Ohio and elsewhere, the defendants, **MAURICE FERGUSON, a.k.a. "REESE"** and **"RED"** and **MICHAEL FERGUSON**, did knowingly, willfully, intentionally, and unlawfully combine, conspire, confederate and agree together, and with other persons both known and unknown to the Grand Jury, to

1. knowingly conduct and attempt to conduct one or more financial transactions, in and affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is one or more violations of 21 U.S.C. § 841 and § 846, which financial transactions were designed, at least in part, to conceal and disguise the nature, the source, the

12

location, the ownership, and the control of such proceeds, and while conducting and attempting to conduct such transactions knowing that the proceeds involved represented the proceeds of some form of unlawful activity; in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

2. knowingly conduct and attempt to conduct one or more financial transactions, in and affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is one or more violations of 21 U.S.C. § 841 and § 846, with intent to promote the carrying on of such specified unlawful activity, and, while conducting and attempting to conduct such transactions, knowing that the proceeds involved represented the proceeds of some form of unlawful activity; in violation of 18 U.S.C. § 1956(a)(1)(A)(i).

3. knowingly conduct and attempt to conduct one or more monetary transactions by, through, and to a financial institution, in and affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000.00 from one or more violations of 21 U.S.C. § 841 and § 846; in violation of 18 U.S.C. § 1957.

It was part of the conspiracy that **MAURICE FERGUSON** and others, both known and unknown to the grand jury, would provide U.S. currency to **MICHAEL FERGUSON** for the purpose of, but not limited to, purchasing real estate in his name.

13

It was a part of the conspiracy that members of the conspiracy would invest proceeds of the unlawful activities in the real estate to increase its overall value.

It was a part of the conspiracy that **MICHAEL FERGUSON**, having maintained the real estate in his name, would seek new appraisals on the value of the property and refinance at the increased value.

It was a part of the conspiracy that **MICHAEL FERGUSON** would rent or sell the real estate which members of the drug trafficking organization had provided him money to purchase.

It was further part of the conspiracy that members of the drug trafficking organization commingled proceeds from controlled substance violations with other funds, which made it more difficult for law enforcement agencies to trace the illegal proceeds and property.

In furtherance of the conspiracy and to effect the objects thereof, one or more of the members of the drug trafficking organization formed the agreement or committed at least one overt act in the Southern District of Ohio, including, but not limited to, the following overt acts:

1. Between 2004 and 2006, **MICHAEL FERGUSON** concealed large sums of narcotics proceeds provided to him by members of the drug trafficking organization at his residence located at 11894 Winston Court, Cincinnati, Ohio.

2. Sometime before April of 2004, **MICHAEL FERGUSON**

received a large sum of U.S. currency from **MAURICE FERGUSON** towards the purchase of a residence at 1939 Crest Avenue, Forest Park, Ohio.

3.  In or about April of 2004, **MICHAEL FERGUSON,** purchased a residence at 1939 Crest Avenue, Forest Park, Ohio.

4.  In or about January of 2006, **MICHAEL FERGUSON** rented a residence at 5548 Lakeside Drive, Fairfield, Ohio to a member of the drug trafficking organization and the rent proceeds constituted profits from the sale of narcotics.

5.  During the time period that **MICHAEL FERGUSON** rented the Lakeside residence to the member of the drug trafficking organization, **MICHAEL FERGUSON** allowed the member of the drug trafficking organization to invest between $40,000 - 50,000 in the property.

6.  In January of 2006, **MICHAEL FERGUSON** used proceeds of narcotics to pay the legal fees of a member of the drug trafficking organization as well as make payments to the member.

7.  Sometime prior to March of 2006, a member of the drug trafficking organization gave **MICHAEL FERGUSON** approximately $70,000 towards the purchase of two apartment buildings located at 736 South Fred Shuttlesworth Circle, Cincinnati, Ohio.

8.  On or about March 1, 2006, **MICHAEL FERGUSON** purchased

15

two apartment buildings located at 736 South Fred Shuttlesworth Circle, Cincinnati, Ohio.

All in violation of 18 U.S.C. § 1956(h).

## FORFEITURE ALLEGATIONS

### (COUNTS 1 - 8)

Pursuant to 21 U.S.C. § 853(a), as a result of the violation in Counts 1 through 8 above, the defendants shall forfeit to the United States:

> (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation; and
>
> (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation, including but not limited to, a money judgment.

Additionally, the defendants shall forfeit to the United States, under 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property, including but not limited to:

> a. a money judgment in the amount of the property involved in the offense; and
>
> b. the assets of all businesses involved in the offense, including, but not limited to all financial and other accounts involved in the offense.

### SUBSTITUTE ASSETS

If any of the above-described forfeitable property, as a result of any act or omission of the defendants,

16

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty:

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated in Title 18, United States Code 982 by 18 U.S.C. § 982(b)(1), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

**A True Bill.**

/s/
------

**Grand Jury Foreperson**

GREGORY G. LOCKHART
United States Attorney

ANTHONY SPRINGER
Deputy Criminal Chief